**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | | |
|---|---|---|
| **KAREN LOUISE DENNEY LINK,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 7:22-cv-00130-O-BP** |
| | § | |
| **COMMISSIONER OF** | § | |
| **SOCIAL SECURITY,** | § | |
| | § | |
| **Defendant.** | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Karen Louise Denney Link ("Link") applied for Disability Insurance Benefits ("DIB")
under the Social Security Act ("SSA"). The Commissioner denied her application, deciding that
she was not disabled. Link appealed. Because substantial evidence supports the Commissioner's
decision, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor
**AFFIRM** the Commissioner's decision.

**I.     BACKGROUND**

Fifty-seven-year-old Link applied for DIB under SSA Title II, claiming disability status
since June 10, 2020. Soc. Sec. Admin. R. (hereafter "Tr."), ECF No. 6-1 at 27; 254-256. Link's
DIB application specified several medical conditions that limit her ability to work, including
squamous cell carcinoma, bunion, brain injury, knee problems, asthma, post-traumatic stress
disorder, stomach ulcers, hernia, spinal stenosis, and heart problems. *Id.* at 97. The Commissioner,
however, denied her application initially and upon reconsideration. *Id.* at 147-150, 152-154.

Link challenged the Commissioner's denial before an Administrative Law Judge ("ALJ"),
who conducted a telephonic hearing and later affirmed the Commissioner's denial in a sixteen-

page decision. *See id.* at 156-57, 66-94, and 27-42, respectively. After the Social Security Appeals

Council ("AC") denied Link further administrative review (*id.* at 1), she filed this civil action

seeking judicial review under 42 U.S.C. § 405(g). ECF No. 1; *see also Higginbotham v. Barnhart*,

405 F.3d 332, 337 (5th Cir. 2005) ("[T]he Commissioner's decision does not become final until

after the [AC] makes its decision denying the claimant's request for review."). Link claims that

she is disabled and thus entitled to DIB. ECF No. 1.

## II.    STANDARD OF REVIEW

Title II of the SSA, 42 U.S.C. §§ 401-434, governs the disability insurance program. A

person is disabled if she is unable "to engage in any substantial gainful activity by reason of any

medically determinable physical or mental impairment which can be expected to result in death or

which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.*

§ 423(d)(1)(A). To determine whether a claimant is disabled and thus entitled to DIB, the

Commissioner employs a sequential five-step evaluation process. 20 C.F.R. § 404.1520.

First, the claimant must not be presently doing any substantial gainful activity. *Id.*

§ 404.1520(a)(4)(i). "Substantial gainful activity" is work that "involves doing significant physical

or mental activities" for pay or profit. *Id.* § 404.1572. Second, the claimant must have a severe

impairment or combination of impairments. *Id.* § 404.1520(a)(4)(ii). Third, disability exists if the

impairment or combination of impairments meets or equals an impairment in the federal regulatory

list. *See id.* § 404.1520(a)(4)(iii) (referencing 20 C.F.R. pt. 404, subpt. P, app. 1). Before

proceeding to steps four and five, the Commissioner assesses the claimant's residual functional

capacity ("RFC") and considers her past relevant work ("PRW"). *See id.* § 404.1520(a)(4), (e)-(f).

RFC means "the most [a claimant] can still do despite [her] limitations," *id.* § 404.1545(a)(1),

while PRW means work the claimant has done "within the past 15 years, that was substantial

gainful activity, and that lasted long enough for [the claimant] to learn to do it." *Id.* § 404.1560(b)(1).

Fourth, if the claimant's medical status alone does not constitute a disability, the impairment or impairments must prevent the claimant from returning to her PRW considering her RFC. *Id.* § 404.1520(a)(4)(iv). Fifth, the impairment must prevent the claimant from doing any other relevant work, considering the claimant's RFC, age, work experience, and education. *Id.* § 404.1520(a)(4)(v); *Crowley v. Apfel*, 197 F.3d 194, 197-98 (5th Cir. 1999). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987). "The claimant bears the burden of showing she is disabled through the first four steps of the analysis; on the fifth, the Commissioner must show that there is other substantial work in the national economy that the claimant can perform." *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007).

Judicial review is limited to determining whether the Commissioner applied correct legal standards and whether substantial evidence in the record supports the Commissioner's decision. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). "Substantial evidence is such relevant evidence as a reasonable mind might accept to support a conclusion." *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001) (quoting *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000)).

"A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* (quoting same). The Court may neither reweigh evidence in the record nor substitute its judgment for the Commissioner's, but it will carefully

scrutinize the record to determine if substantial evidence is present. *Harris*, 209 F.3d at 417; *Hollis*, 837 F.2d at 1383. "Conflicts in the evidence are for the [Commissioner] and not the courts to resolve." *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999) (alteration in original) (quoting *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)).

## III.    ANALYSIS

The Commissioner, acting through the ALJ, completed the five-step evaluation process here. *See* Tr. 25-42. First, the ALJ found that Link had not engaged in substantial gainful activity since June 10, 2020. *Id.* at 30. Second, she found several medically determinable impairments including foot impairment (including bunions and residual issues following bunionectomy), osteoarthritis of the knees, shoulder impairment (including osteoarthritis and damaged rotator cuff), asthma and chronic obstructive pulmonary disease ("COPD"), coronary artery disease, sleep apnea, gastrointestinal impairments, anal carcinoma, brain injury, mental impairments (including Post Traumatic Stress Disorder ("PTSD"), anxiety, and depression) The ALJ designated only foot impairment, osteoarthritis of the knees, shoulder impairment, asthma, COPD, and coronary artery disease,  as "severe" impairments. *Id.* at 30-31. Third, she did not identify an impairment or combination of impairments that qualify under the federal regulatory list. *Id.* at 34-35.

The ALJ then determined that Link had the RFC to "perform light work as defined by 20 C.F.R. [§] 404.1567(b) except no more than frequent balancing and stooping; no more than occasional [sic]." *Id.* at 35. The AC noted that the rest of the RFC appeared to be omitted from the decision and therefore found as follows:

> The claimant had the [RFC] to perform the full range of light work, except she could do no more than frequent balancing and stooping, and no more than occasional kneeling, crouching, and climbing of ramps and stairs, could never crawl or climb ladders, ropes, and scaffolds, must avoid concentrated exposure to pulmonary irritants

such as fumes, dusts, and chemicals, and could occasionally reach
overhead with the right arm.

*Id.* at 5-6.

Using this RFC determination and after hearing testimony from a vocational expert ("VE"), the ALJ determined that Link could perform PRW as a pharmacy technician. *Id.* at 41. The step-four finding terminated the ALJ's evaluation because Link was not disabled and thus was ineligible to receive DIB. *Id.* at 41-42; *see Lovelace*, 813 F.2d at 58. Link urges reversal because the ALJ erred at step two by finding her mental impairments nonsevere. ECF No. 9 at 10-14.

### A.    "Paragraph B" lists criteria for mental impairments.

The definition of medically severe impairment at step two "has a specific—if somewhat surprising—meaning." *Salmond v. Berryhill*, 892 F.3d 812, 817 (5th Cir. 2018). "Phrased in the negative, an 'impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.'" *Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (alteration in original) (quoting *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985)). "This second step requires the claimant to make a *de minimis* showing." *Salmond*, 892 F.3d at 817.

In determining the claimant's mental limitations, an ALJ considers evidence of her abilities to understand, remember, and carry out instructions, as well as respond appropriately to supervision, co-workers, and work pressures in a work setting. *Id.* at § 405.945(c). An ALJ uses what is known as the "paragraph B criteria" to rate the degree of the claimant's mental limitations in four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.* at §

405.920a; *see id.* Part 404, Subpart P, Appendix 1. Finally, an ALJ considers limitations and restrictions that affect other work-related abilities. 20 C.F.R. § 405.945(d).

The limitations identified in paragraph B "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." *Owen v. Astrue*, No. 3:10-cv-1439-BH, 2011 WL 588048, at *14 (N.D. Tex. Feb. 9, 2011) (citing SSR 96-8P, 1996 WL 374184, at *4 (S.S.A. July 2, 1996)). The mental RFC assessment requires a more detailed analysis in which an ALJ itemizes the various functions found in paragraphs B and C of the adult mental disorders listings and expresses them in terms of work-related functions, including "the abilities to understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers, and work situations; and deal with changes in a routine work setting." *See* SSR 96-8P, 1996 WL 374184 at *4-6.

Although an ALJ must consider the claimant's paragraph B functional limitations when determining the mental RFC, she is not required to incorporate them into her RFC assessment "word-for-word." *Berry v. Astrue,* No. 3:11-cv-02817-L-BH, 2013 WL 524331, at *22 (N.D. Tex. Jan 25, 2013) *rec. adopted* 2013 WL 540587 (N.D. Tex. Feb. 13, 2013) (citing *Westover*, 2012 WL 6553102, at *8; *Owen v. Astrue*, No. 3:10-cv-1439-BH, 2011 WL 588048, at *20 (N.D. Tex. Feb. 9, 2011)). The Fifth Circuit has recognized that an ALJ need not adopt any specific physician's assessment but must interpret the medical evidence to determine a claimant's capacity for work. *Miller v. Kijakazi,* No. 22-60541, 2023 WL 234773 at *4 (5th Cir. Jan. 18, 2023).

**B.    Substantial evidence supports the ALJ's RFC Determination.**

Link's only argument on appeal is that substantial evidence does not support the ALJ's RFC, specifically that the ALJ failed to properly consider the severity of her mental impairments. ECF No. 9 at 10. Link cites to several doctors' opinions in the record that support a finding of

severe mental impairment. ECF No. 9 at 10-14. The Commissioner contends that while determining at step two that Link's PTSD, anxiety, and depression were nonsevere, the ALJ considered the medical record, including "the broad functional areas of mental functioning set out in the disability regulations for evaluating mental disorders and in the listing of impairments." Tr. at 32; ECF No. 13 at 2-6 (citing 20 C.F.R. § 404.1520a).

The Commissioner further argues that the ALJ recognized that the limitations identified in the "paragraph B" criteria are not an RFC assessment, but rate the severity of the mental impairments at steps two and three of the sequential evaluation process. *Id.* at 34. The ALJ then thoroughly addressed the medical evidence supporting her findings of no limitations, including an evaluation of each of the "paragraph B" criteria's four functional areas. *Id.* at 32-34.

### 1.    Understanding, Remembering, and Applying Information

First, the ALJ addressed Link's ability to understand, remember, and apply information She observed that some parts of the record supported Link's claims of PTSD and anxiety order diagnoses. ECF No. 6-3 at 515-17. Link also reported symptoms such as memory limitations. *Id.* at 342. However, when reviewing the entire medical record, the ALJ found it more consistent with a finding of no limitations. *Id.* at 32. In particular, the objective results of Link's medical examinations had generally been normal or unremarkable in areas such as memory, judgment, knowledge, and cognition. ECF Nos. 6-2 at 251, 360, 510; 6-3 at 14, 565, 614, 636. The record also did not show long term problems with Link's ability to understand or recall her conversations with medical sources. *Id.* Further, the record indicated that Link was capable of relevant activities, including driving a car, shopping, personal banking, paying bills, and using electronic devices. ECF No. 6-1 at 338-43.

### 2. Interacting with Others

Second, the ALJ noted that some of Link's problems interacting with others were consistent with the record, including anxious mood during multiple doctor appointments and Link's self-reporting that "being in a crowd terrifies [her] because of [her] PTSD." ECF Nos. 6-2 at 383; 6-3 at 14-15. However, the ALJ again found the medical record as a whole more consistent with a finding of no limitations. ECF No. 6-1 at 32. Link's medical sources cited objectively normal or unremarkable speech, behavior, and cooperation problems, along with no noteworthy mood abnormalities. ECF Nos. 6-1 at 515; 6-2 at 251, 360, 383, 488; 6-3 at 16, 377, 565, 614. Additionally, the ALJ noted that Link repeatedly denied that she had "any problems" with social interactions. ECF No. 6-1 at 342, 398.

### 3. Concentrating, Persisting or Maintaining Pace

Third, the ALJ evaluated problems Link had concentrating, persisting, or maintaining pace, and determined that the record supported in part a finding of mild limitations. The ALJ noted consistency in Link's complaints about difficulty staying on task and concentrating. ECF Nos. 6-2 at 383; 6-3 at 14-15. But the record also showed generally benign or silent objective notations for symptoms such as alertness, attention, and concentration. ECF Nos. 6-1 at 515; 6-2 at 251, 360, 383, 488; 6-3 at 14, 16, 377, 565, 614, 636.

### 4. Adapting or Managing Oneself

In the last category, the ALJ concluded that Link's self-reported comments were consistent, including complaints of fears, nightmares, and difficulties managing stress. ECF Nos. 6-2 at 383; 6-3 at 14-15. Link also went to counseling and was managing drug treatment for her symptoms. ECF No. 6-1 at 510-17. The ALJ noted that the record also highlighted some inconsistences that suggested a more accurate finding of no limitations in this area. *Id.* at 34. The ALJ cited to several

supporting reports in areas such as orientation, appearances, and thought processes.  ECF Nos. 6-1 at 515; 6-2 at 251, 360, 383, 488; 6-3 at 14, 16, 377, 565, 614, 636. The record also reflected that Link has seen improvement in her symptoms with treatment such that they were "well-controlled." ECF No. 6-3 at 614.

### 5.     Additional Medical Evidence

Two state agency medical consultants ("SAMCs") evaluated Link in 2021, but came to different opinions regarding her level of mental functioning. ECF No. 6-1 at 109-10 and 130-31. In February, Dr. Mercer suggested "mental nonseverity" and found only mild limitations in each of the four categories. *Id.* at 109-10. She stated further in her report that "while evidence establishe[d] mental medically determinable impairments ("MDIs"), the medical evidence of record ("MEOR") indicates that [her] symptoms result in no more than minimal limits in the ability to function independently, effectively, and appropriately on a sustained basis." *Id.* at 110. In April, Dr. Meyer on reconsideration "suggested mental severity" and found moderate limitations in three of the four categories, but both SAMCS still found Link to be nondisabled. *Id.* at 130-31.

Additionally, Link visited a nurse practitioner, Allyn McMillan, for a physical assessment in July 2020. *Id.* at 140. Ms. McMillan made diagnoses, including generalized anxiety disorder. *Id.* Both SAMCs found McMillan's report less than persuasive because her more restrictive finding "was without substantial support from the medical source who made it" and because "the opinion relies heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion." *Id.* at 116, 140.

### C.     There is no legal error in the ALJ's analysis.

The Court has found no legal error when an ALJ does not include mental limitations in a claimant's RFC so long as the ALJ considered the limiting effects and restrictions of all impairments in the RFC analysis, even those impairments that are non-severe. *Gonzales v. Colvin*,

No. 3:15-cv-0685-D, 2016 WL 107843, at *6, *8 (N.D. Tex. Jan. 11, 2016) (holding that "the ALJ adequately discussed and considered the limiting effects of [Plaintiff's] mental impairments in formulating his RFC" when the ALJ's RFC analysis considered relevant mental health records, reports, and plaintiff's testimony regarding his mental impairments).

Here, the ALJ fulfilled her role as factfinder in determining Link's mental RFC, and substantial evidence supports the ALJ's step two finding that Link's mental impairments were nonsevere and did not impact her ability to work. Link may disagree with the ALJ's findings and provide some contradictory evidence, but those points do not constitute reversible error. *Caldwell v. Colvin*, No. 4:15-cv-00576-O-BL, 2016 WL 3621097, at *3 (N.D. Tex. June 10, 2016), *rec. adopted*, No. 4:15-cv-00576-O, 2016 WL 3523780 (N.D. Tex. June 28, 2016) (disagreement with the ALJ's RFC finding does not carry her burden of establishing that no substantial evidence supports the ALJ's determination).

### D.    Even if the ALJ erred, the error is harmless.

The Court also must recognize that if the ALJ erred by finding Link's mental impairments nonsevere, the "harmless error rule" counsels against reversal unless the error caused harm. *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988). Harmful error occurs where "the substantial rights of a party have been affected." *Id.* Harmless error "exists when it is inconceivable that a different administrative conclusion would have been reached even if the ALJ did not err." *Keel*, 986 F.3d at 556. "The major policy underlying the harmless error rule is to preserve judgments and avoid waste of time." *Mays*, 837 F.2d at 1364 ("Procedural perfection in administrative proceedings is not required.").

Dr. Mercer found that Link had "mild" limitations in each of the four categories. Tr. 109-10. Pursuant to social security regulations, four "mild" limitations require a "nonsevere"

determination. 20 C.F.R. 404.1520a(d)(1). And Dr. Mercer went further to note that even if Link required mild limitations, those limitations would not impact her ability to work. Tr. at 110. The ALJ found that Link had "no limitations" in each of the same four categories, a finding that was indistinguishable in effect from the results that Dr. Mercer found during her examination.

Ultimately, the ALJ concluded that Link had not carried her burden of showing severe mental impairments: "[Link's] medically determinable mental impairments, PTSD, anxiety, and depression, considered singly and in combination, do not cause more than minimal limitation in [Link's] ability to perform basic mental work activities and are therefore nonsevere." *Id.* at 32.

When evaluating the extent of a claimant's ability to do mental work activities, an ALJ must consider medical opinions together with the rest of the relevant evidence in the record. 20 C.F.R. § 404.1545(a)(3). Link has not shown that the ALJ lacked credible evidence or that she did not consider all medical opinions and the rest of the record evidence. After review of the ALJ's decision and evidence that she referenced in that decision, the Court finds that substantial evidence supported the ALJ's conclusion, despite Link's disagreement with it.

## IV.    CONCLUSION

Because the ALJ employed the correct legal standards, and substantial evidence supports the ALJ's finding that Link's mental impairments were nonsevere, the undersigned **RECOMMENDS** that Judge O'Connor **AFFIRM** the Commissioner's decision.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within fourteen days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for

the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on June 29, 2023.


Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE